1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| WATERFORD TOWNSHIP GENERAL EMPLOYEES RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   vs.<br><br>MONOLITHIC POWER SYSTEMS, INC., MICHAEL HSING, and BERNIE BLEGEN,<br><br>          Defendants. | No. 25-220<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900

1    Plaintiff Waterford Township General Employees Retirement System ("plaintiff"), on

2    behalf of itself and all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's

3    complaint against defendants, alleges the following based upon personal knowledge as to plaintiff

4    and plaintiff's own acts, and upon information and belief as to all other matters based on the

5    investigation conducted by and through plaintiff's attorneys, which included, among other things,

6    a review of certain U.S. Securities and Exchange Commission ("SEC") filings by Monolithic

7    Power Systems, Inc. ("Monolithic" or the "Company"), Company press releases and earning calls,

8    and analyst and media reports about the Company.[1] Plaintiff believes that substantial evidentiary

9    support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

11    1.    This is a securities class action on behalf of all purchasers of Monolithic common

12    stock between February 8, 2024 and November 8, 2024, inclusive (the "Class Period"). Plaintiff

13    seeks to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934

14    Act") against Monolithic and certain of the Company's senior executive officers.

## JURISDICTION AND VENUE

16    2.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the

17    1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated

18    thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

19    §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa.

20    3.    Venue is proper in this District pursuant to §27 of the 1934 Act, because the

21    Company resides and is headquartered in this District, and many of the events and omissions giving

22    rise to the claims asserted herein occurred in substantial part in this District.

23    4.    In connection with the acts alleged in this complaint, defendants, directly or

24    indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

---

[1]    Emphasis has been added throughout unless otherwise noted.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 1 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900

1  to, the mails, interstate telephone communications, and the facilities of the national securities
2  markets.

### PARTIES

3
4      5.    Plaintiff Waterford Township General Employees Retirement System, as set forth
5  in the accompanying certification incorporated by reference herein, purchased Monolithic
6  common stock during the Class Period, and has been damaged thereby.

7      6.    Defendant Monolithic is a provider of power management components used in
8  electronic systems.  The Company is headquartered in Kirkland, Washington.  Monolithic common
9  stock is listed on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol
10  "MPWR."

11      7.    Defendant Michael Hsing ("Hsing") founded Monolithic in 1997 and has served as
12  the Company's Chief Executive Officer ("CEO") and Chairman of Monolithic's Board of
13  Directors ("Board") since that time.

14      8.    Defendant Bernie Blegen ("Blegen") has served as Monolithic's Chief Financial
15  Officer ("CFO") since July 2016.  Prior to this role, Blegen served as Monolithic's Corporate
16  Controller.

17      9.    Defendants referenced above in ¶¶7-8 are referred to herein as the "Individual
18  Defendants."

19      10.    Each of the Individual Defendants was directly involved in the management and
20  day-to-day operations of the Company at the highest levels and was privy to confidential
21  proprietary information concerning the Company and its business, operations, services, products,
22  and present and future business prospects during the time of their employment with the Company.
23  In addition, the Individual Defendants were involved in drafting, producing, reviewing, and
24  disseminating the false and misleading statements and information alleged herein, were aware of,
25  or recklessly disregarded, the false and misleading statements being issued regarding the
26  Company, and approved or ratified these statements, in violation of the federal securities laws.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

11.    As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the 1934 Act and traded on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate, truthful, and complete information with respect to the Company's operations, business, products, and present and future business prospects during the time of their employment with the Company.  In addition, the Individual Defendants each had a duty to correct any previously issued statements that were materially misleading or untrue, so that the market price of the Company's publicly traded shares would be based upon truthful, accurate, and complete information.  The Individual Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the contents of various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be false and/or misleading before or shortly after their issuance, participated in conference calls with investors during which false and misleading statements were made, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

13.    The Individual Defendants together with Monolithic are referred to herein as "defendants."

**BACKGROUND**

14.    Monolithic is a provider of power management components that are used in broader electronic systems.  Monolithic's power management products function by converting voltages to the appropriate wattage required for use by an electronic system.  Although Monolithic's power

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 3 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

control modules are used across a broad range of application settings, the products are most notably used in artificial intelligence ("AI") data center applications.

15.    To sell its products, Monolithic claims it relies on a staff of technical sales and applications engineers who assist prospective customers with the design and use of the Company's products and in the development of the customers' own products. According to Monolithic, this process enables the Company to meet customers' exacting specifications for quality and performance and promotes future product sales.

16.    Monolithic reports its financial and operational results under a single operating segment. However, the Company also reports revenue generated by sales into various end markets. Chief among these end markets is Enterprise Data, which includes sales of power management modules to technology companies engaged in supplying graphic processing units ("GPUs") that are used to run and operate AI data servers. Nvidia Corporation ("Nvidia") – the world's leading supplier of GPUs – is Monolithic's largest customer.

17.    Due to intense demand for AI applications, global technology companies have poured hundreds of billions of dollars into the construction of data centers necessary for the development of AI technologies. Amid this influx of AI-related capital, Nvidia launched the "Hopper" GPU in late 2022, which was used to construct the next wave of AI data centers.

18.    As the sole supplier of certain power modules used in Nvidia's Hopper GPUs, Monolithic benefitted from the downstream effects of the growing demand for AI infrastructure. For example, following the launch of Nvidia's Hopper GPUs, Monolithic's Enterprise Data business quickly became the Company's largest and fastest growing unit, jumping from 11% of total sales in the second fiscal quarter of 2023 to roughly 27% of sales the following quarter. By the end of the fourth quarter of 2023, Enterprise Data had become Monolithic's largest business segment, representing approximately 28% of the Company's overall sales.

19.    During the Class Period, Monolithic executives represented to investors that the widespread adoption and use of the Company's products within the AI industry was due to the

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 4 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

purportedly superior performance of Monolithic products. For example, during a February 2024 conference call, defendant Hsing represented that Monolithic's customers were "very receptive" to the Company's products and claimed that client demand was increasing because Monolithic's products were able to "solve" issues within their systems. During a subsequent call with investors, defendant Blegen similarly stated that Monolithic's products had gained a majority market share due to the Company's innovative solutions and claimed that Monolithic could maintain its market-leading position because the Company was working with clients, including Nvidia, on the development of their next-generation products.

20.     Monolithic's filings with the SEC also emphasized the Company's purported specialization in semiconductor technologies and highlighted the supposed reliability and performance of Monolithic's products. For example, in quarterly reports filed throughout the Class Period, Monolithic represented that it possessed "innovative proprietary" technology and an "expertise" in semiconductor design and claimed that these advantages allowed the Company to deliver "reliable, compact, and monolithic solutions."

21.     As a result of the demand for its purportedly superior products, Monolithic reported favorable revenue growth during the Class Period. For example, for the second fiscal quarter of 2024, Monolithic reported "record" quarterly revenue of $507 million. Monolithic attributed this unprecedented revenue growth in substantial part to increased customer demand for its AI power solutions, which had caused Enterprise Data revenue to increase 290% year-over-year to $187 million, from $48 million in the prior year quarter.

22.     In the wake of these disclosures, analysts applauded Monolithic's financial results. For example, a Deutsche Bank analyst report stated that Monolithic was a "[b]eacon on a hill" compared to peers who, in contrast, had reported "relatively muted" financial results. Similarly, an Oppenheimer analyst report stated that Monolithic had reported "standout" results, making the Company a "Rose Among Thorns" given recent "peer malaise."

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 5 -

23.     Unbeknownst to investors, however, Monolithic's power management solutions were suffering from significant performance and quality control issues, which, in turn, negatively impacted the GPUs they powered like those supplied by Nvidia.  Contrary to defendants' Class Period representations that Monolithic had resolved quality issues with the components the Company supplied to Nvidia, Monolithic in fact failed to rectify known product defects that had impaired the performance of Nvidia's products.  As a result of these shortcomings, Monolithic's relationship with Nvidia (its largest customer) had been irreparably damaged, thereby exposing Monolithic to material undisclosed risks of significant business, financial, and reputational harm.

24.     Then, on October 30, 2024, in connection with reporting its third fiscal quarter of 2024 financial results, Monolithic revealed a sudden and surprising slowdown in its Enterprise Data segment.  The Company disclosed that its Enterprise Data revenue had declined sequentially during the quarter to $184 million, missing consensus estimates by nearly 13%.  During an investor call held later that day, defendant Blegen revealed that customer order patterns had fallen materially below recent historical trends, which negatively impacted Enterprise Data sales in the quarter, and that this negative trend would continue.

25.     Analysts attributed the unexpected slowdown in Monolithic's Enterprise Data sales to a delayed launch of Nvidia's next-generation Blackwell GPUs, initial sales of which had originally been scheduled to commence in the second quarter of 2024.  For example, a Rosenblatt analyst report stated that Enterprise Data "took a pause for 4Q24, we think, on the delayed Blackwell ramp."  Similarly, a Summit Insights Group analyst report stated that Monolithic's Enterprise Data sales in the quarter had underperformed expectations "primarily due" to Nvidia's Blackwell "shipment delays."

26.     Then, on November 11, 2024, Edgewater Research analysts published an explosive report revealing that Nvidia had canceled half of its outstanding Monolithic orders and intended to eliminate Monolithic as a supplier for Nvidia's most-advanced Blackwell GPU variants due to persistent "[p]erformance issues" with the Company's power modules.  The report further revealed

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 6 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

that Nvidia engineers had "lost confidence" in Monolithic after it failed to address performance issues in its voltage regulator model and that Nvidia had decided to pivot to Monolithic's competitors as its "primary suppliers."

27.    As a result of these disclosures, the price of Monolithic stock declined more than 30% from its Class Period high of more than $959 per share to approximately $647 per share by Class Period end, inflicting hundreds of millions of dollars of financial losses on investors and economic damages under the federal securities laws.

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS AND OMISSIONS ISSUED DURING THE CLASS PERIOD

28.    The Class Period begins on February 8, 2024.  After close of market on February 7, 2024, Monolithic issued a release announcing the Company's financial results for its fourth fiscal quarter and year ending December 31, 2023 ("4Q23 Release").  The 4Q23 Release stated that Monolithic's quarterly revenues decreased to $454 million from $460 million in the prior year quarter.  The 4Q23 Release further stated that quarterly revenues within the Company's Enterprise Data business increased to $129 million from $68 million in the prior year quarter.

29.    That same day, Monolithic held a conference call with analysts to discuss the Company's financial and operational results for the fourth quarter of 2024, which was hosted by defendants Hsing and Blegen.  During the call, defendant Hsing emphasized the exceptional "performance" of Monolithic's power solutions and claimed that the Company's customers kept "requesting it" because Monolithic's products could solve "all [of their] issues," and was designed "to make sure we're the best."

30.    Defendant Hsing further stated that Monolithic had experienced "some issues" with its power management Stage 1 components, but reassured investors that "all these issues are resolved," which he claimed would enable Monolithic to "significantly" increase the amount of products installed on customer projects, stating in pertinent part as follows:

> Yes, okay.  We had some issues on the Stage 1.  We had some design wins and very small volumes in different systems, actually.  ***Now we don't have – all***

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 7 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

*these issues are resolved. That will significantly gain the content. And in each AR systems*.

31.    That same day, analysts at Truist Securities published an analyst report stating that Monolithic had acknowledged a "quality issue" with components supplied to Nvidia, but reassured investors that the Company had "identified the problem, the failure rate is low, the problem is fixed, and the relationship remains on solid footing."

32.    On February 29, 2024, Monolithic filed with the SEC its annual report on Form 10-K for its fiscal year ending December 31, 2023, which was signed by defendants Hsing and Blegen and certified by them that the filing was materially complete, accurate, and free from fraud ("2023 Form 10-K"). The 2023 Form 10-K contained the same financial information regarding Monolithic's quarterly and annual revenues that were reflected in 4Q23 Release.

33.    The 2023 Form 10-K represented that Monolithic had "core strengths" in design expertise and proprietary technologies, which it claimed enabled the Company to deliver "reliable" and "cost-effective" products. The Form 10-K also stated that Monolithic "differentiate[d]" itself "by offering solutions that are . . . more accurate with respect to performance specifications and, consequently, more cost-effective than many competing solutions."

34.    The 2023 Form 10-K also represented that Monolithic's power management solutions were "differentiated" in the market due, in part, to their "increased reliability" and "lower" system cost relative to competing products.

35.    On May 1, 2024, Monolithic issued a release announcing the Company's financial results for its first fiscal quarter ending March 31, 2024 ("1Q24 Release"). The 1Q24 Release stated that Monolithic's quarterly revenues increased to $458 million from $451 million in the prior year quarter. The 1Q24 Release further stated that quarterly revenues within the Company's Enterprise Data business increased to $150 million from $47 million in the prior year quarter.

36.    That same day, Monolithic hosted a conference call with analysts to discuss the Company's financial and operational results for the first quarter of 2024, which was hosted by defendants Hsing and Blegen. In response to a question from an analyst regarding the Company's

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 8 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

relationship with its "largest enterprise data customer" (*i.e.*, Nvidia), defendant Blegen represented that Monolithic was "at the front of the design cycle, we're consulted, we're integrated, in fact, with the development of the next generation of products" and claimed that the Company was strategically positioned to continue to be a "leader" in the market for such products.

37.     Defendant Hsing responded to the same question by emphasizing Monolithic's purported quality advantages, stating: "[W]e are not a champion of volumes, okay?  We don't do that.  We want to every – whatever we do, we do the best."

38.     On May 3, 2024, Monolithic filed with the SEC a quarterly report on Form 10-Q for its first fiscal quarter ending March 31, 2024, which was signed by defendants Hsing and Blegen and certified by them that the filing was materially complete, accurate and free from fraud ("1Q24 Form 10-Q").  The 1Q24 Form 10-Q contained the same financial information regarding Monolithic's quarterly revenues that were reflected in 1Q24 Release.

39.     The 1Q24 Form 10-Q represented that Monolithic had "core strengths" in design expertise and proprietary technologies, which it claimed enabled the Company to deliver "reliable" and "cost-effective" products "while providing a consistent return on investment to our stockholders."

40.     On August 1, 2024, Monolithic issued a release announcing the Company's financial results for its second fiscal quarter ending June 30, 2024 ("2Q24 Release").  The 2Q24 Release stated that Monolithic's quarterly revenues increased to $507 million from $441 million in the prior year quarter.  The 2Q24 Release further stated that quarterly revenues within the Company's Enterprise Data business increased to $187 million from $48 million in the prior year quarter.

41.     That same day, Monolithic held a conference call with analysts to discuss the Company's financial and operational results for the second quarter of 2024, which was hosted by defendants Hsing and Blegen.  During his prepared remarks, defendant Blegen emphasized

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 9 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

Monolithic's "record" revenue growth, which he attributed in substantial part to increased demand for the Company's AI power solutions, stating in pertinent part as follows:

> Let me open by saying MPS reported yet another record quarter, with Q2 2024 revenue of $507.4 million, exceeding the high end of our guidance. ***Our strong revenue growth was attributed to three factors: increased demand for AI power solutions, improving order trends in several of our end markets, and lastly, initial revenue ramps associated with design wins secured in past years***.

42. On August 2, 2024, Monolithic filed with the SEC a quarterly report on Form 10-Q for its second quarter ending June 30, 2024, which was signed by defendants Hsing and Blegen and certified by them that the filing was materially complete, accurate and free from fraud ("2Q24 Form 10-Q"). The 2Q24 Form 10-Q contained the same financial information regarding Monolithic's quarterly revenues that were referenced in the 2Q24 Release.

43. The 2Q24 Form 10-Q represented that Monolithic had "core strengths" in design expertise and proprietary technologies, which it claimed enabled the Company to deliver "reliable" and "cost-effective" products "while providing a consistent return on investment to our stockholders."

44. The statements referenced in ¶¶28-43 above were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to defendants or recklessly disregarded by them as follows:

(a) that Monolithic's voltage regulator modules and power management integrated circuits were suffering from significant performance and quality control issues;

(b) that the defects listed in (a), above, had, in turn, negatively impacted the performance of certain products offered by Nvidia in which such products were used;

(c) that Monolithic had failed to adequately address and resolve known issues affecting the performance of the power management solutions the Company supplied to Nvidia;

(d) that Monolithic's relationship with Nvidia – the Company's most important customer – had been irreparably damaged due to the significant performance and quality control

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 10 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900

problems affecting the products it supplied to Nvidia and the Company's failure to adequately address such issues, as listed in (a)-(c), above; and

(e)       that as a result of (a)-(d), above, Monolithic was acutely exposed to material undisclosed risks of significant business, financial, and reputational harm.

45.       Then, on October 30, 2024, Monolithic issued a press release announcing the Company's financial results for its third fiscal quarter ending September 30, 2024 ("3Q24 Release").  The 3Q24 Release revealed a sudden and surprising slowdown in Monolithic's critical Enterprise Data segment.  Specifically, the 3Q24 Release reported that quarterly revenue within Monolithic's Enterprise Data business declined sequentially to $184 million, down from $187 million in the prior quarter, missing consensus estimates of $211 million by nearly 13%.  During the corresponding conference call held later that day, defendant Blegen further revealed that customer orders had fallen materially below recent historical trends, which had negatively impacted Monolithic's Enterprise Data revenues and was set to limit segment revenue growth in the upcoming quarter to low single digits.

46.       In the wake of these disclosures, analysts reported that Monolithic's lackluster sales within its Enterprise Data segment were due to Nvidia's shipment delays of its next-generation Blackwell chips.  For example, a Rosenblatt analyst report stated that Monolithic's Enterprise Data segment "took a pause for 4Q24, we think, on the delayed Blackwell ramp."  Similarly, a Summit Insights Group analyst report stated that the Company's Enterprise Data sales in the third quarter had underperformed expectations "primarily due" to Nvidia's Blackwell "shipment delays."

47.       On this news, the price of Monolithic common stock fell more than $160 per share from $919.81 per share on October 30, 2024 to $759.30 per share on October 31, 2024, a decline of more than 17% on above-average trading volume of more than 3 million shares traded. However, the price of Monolithic common stock remained artificially inflated as defendants continued to make material misstatements and omissions and to conceal the full truth regarding the Company's business, operations, and financial results.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 11 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

48.    During Monolithic's third quarter earnings call, defendant Hsing represented that Monolithic's provision of "best"-in-class power solutions had allowed the Company to maintain a dominant initial share of the burgeoning AI market, stating in pertinent part as follows:

> Yes. I mean you probably – everybody knows that if you look at the transcript from the last year, we talked about the market is big and that the market is growing or the AI requirements is growing. ***And so the customers initially will take the – always take the best solutions to fulfill their needs and the best solution and also the speed of the development service, as Bernie said earlier. And that's why we occupied a pretty large shares, okay?***

> And last year, we said, okay, this market is too big and MPS will be always have the best solutions in these applications. And we also talk about the market is bigger. There will be a second or third or fourth supplier to join this segment. And this – and when will that happen, and we don't know, okay? It happened in the last couple of quarters. And again, in next years, what we see – again, the market is growing very fast.

49.    During the call, an analyst asked about Monolithic's "opportunity" within AI accelerators in the upcoming year. In response, defendant Hsing stated that Monolithic's power solutions were the "best" and "most power efficient" in the industry, and represented to investors that the Company's Enterprise Data business "will grow."

50.    The statements referenced in ¶¶48-49, above were materially false and/or misleading when made because they failed to disclose the adverse facts pertaining to the Company's business, operations, and financial condition, which were known to defendants or recklessly disregarded by them as detailed in ¶44, above.

51.    Then, on November 11, 2024, Edgewater Research analysts published an explosive report revealing that Nvidia had cancelled half of its outstanding Monolithic orders and intended to eliminate Monolithic's allocation to most variants of its next-generation Blackwell chips due to "[p]erformance issues" with the Company's products. The report further disclosed that Nvidia engineers had "lost confidence" in Monolithic's products and decided to turn to the Company's competitors as Nvidia's "primary suppliers." Corroborating these claims, the report noted that

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 12 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

1  Monolithic's competitors had received "rush orders" in recent weeks for components related to

2  Nvidia's most-advanced Blackwell models.

3      52.     On this news, the price of Monolithic common stock fell $114 per share from

4  $761.30 per share on November 8, 2024 to $647.31 per share on November 11, 2024, a decline of

5  15% on above-average trading volume of more than 4 million shares traded.

6      53.     While Monolithic attempted to refute the disclosures contained in the Edgewater

7  Research report, the market found the claims credible and concerning.  Moreover, later reports

8  revealed that Nvidia decided to ramp initial Blackwell volumes using competing multi-phase

9  solutions from Monolithic's competitors, Infineon and Renesas.  As a result, in subsequent trading

10  days the price of Monolithic stock continued to fall, reaching a low of $560 per share on November

11  20, 2024.

12      54.     As a result of these declines in the price of Monolithic stock, plaintiff and other

13  Class members have suffered significant financial losses and damages under the federal securities

14  laws.

15                          **ADDITIONAL SCIENTER ALLEGATIONS**

16      55.     As alleged herein, defendants acted with scienter in that defendants knew, or

17  recklessly disregarded, that the public documents and statements they issued and disseminated

18  during the Class Period to the investing public in the name of the Company, or in their own name,

19  were materially false and misleading.  Defendants knowingly and substantially participated or

20  acquiesced in the issuance or dissemination of such statements and documents as primary

21  violations of the federal securities laws.  Defendants, by virtue of their receipt of information

22  reflecting the true facts regarding Monolithic, and their control over and/or receipt and/or

23  modification of Monolithic's allegedly materially misleading misstatements, were active and

24  culpable participants in the fraudulent scheme alleged herein.

25      56.     Defendants knew and/or recklessly disregarded the false and misleading nature of

26  the information they caused to be disseminated to the investing public.  Accordingly, the fraud

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

- 13 -

1    described herein could not have been perpetrated during the Class Period without the knowledge

2    and complicity of, or at least the reckless disregard by, personnel at the highest levels of the

3    Company, including the Individual Defendants.

4         57.    The Individual Defendants, because of their positions with Monolithic, controlled

5    the contents of Monolithic's public statements during the Class Period.  The Individual Defendants

6    were each provided with or had access to the information alleged herein to be false and/or

7    misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its

8    issuance or cause it to be corrected.  Because of their positions and access to material, nonpublic

9    information, the Individual Defendants knew or recklessly disregarded that the adverse facts

10   specified herein had not been disclosed to and were being concealed from the public and that the

11   positive representations that were being made were false and misleading.  As a result, each of the

12   defendants is responsible for the accuracy of Monolithic's corporate statements and is, therefore,

13   responsible and liable for the representations contained therein.

14        58.    Monolithic's relationship with Nvidia, the performance of its products, and

15   prospects of supplying components for Nvidia's next-generation Blackwell GPUs, were among

16   the most important issues facing the Company and the focus of Monolithic management, including

17   the Individual Defendants.  The Individual Defendants repeatedly held themselves out as the

18   persons most knowledgeable regarding the status of Monolithic's relationship with Nvidia.  For

19   example, during the Company's February 2024 earnings call, defendant Hsing represented that

20   "all the[] issues are resolved" relating to the Company's Stage 1 power solutions.  According to

21   analysts, defendants also confirmed that Monolithic had "identified the problem" with components

22   supplied to Nivida, and that "the failure rate is low, the problem is fixed, and the relationship

23   remains on solid footing."  Similarly, during a May 2024 conference call, defendant Blegen stated

24   that Monolithic had "consulted" with its customers regarding next-generation AI technologies –

25   which would include Nvidia – and was "integrated, in fact, with the development of the next

26   generation of products."

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

- 14 -

**NO SAFE HARBOR**

59.     Monolithic's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  To the extent that projected revenue and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.  15 U.S.C. §78u-5(b)(2)(A).

60.     Defendants are also liable for any false or misleading FLS pled because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and approved by an executive officer of Monolithic who knew that the FLS was false.  None of the historic or present tense statements made by these defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by these defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**APPLICATION OF PRESUMPTION OF RELIANCE;**
**FRAUD ON THE MARKET**

61.     At all relevant times, the market for Monolithic common stock was an efficient market for the following reasons, among others:

(a)     Monolithic common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     according to the Company's Form 10-K for the fiscal year ended December 31, 2023, Monolithic had over 48 million shares of common stock outstanding as of February 22, 2024;

(c)     as a regulated issuer, Monolithic filed periodic public reports with the SEC;

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

1        (d)    Monolithic regularly communicated with public investors via established

2    market communication mechanisms, including the regular dissemination of press releases on

3    national circuits of major newswire services, the Internet, and other wide-ranging public

4    disclosures; and

5        (e)    unexpected material news about Monolithic was rapidly reflected in and

6    incorporated into the price of the Company's shares of common stock during the Class Period.

7        62.    As a result of the foregoing, the market for Monolithic common stock promptly

8    digested current information regarding Monolithic from publicly available sources and reflected

9    such information in the price of Monolithic common stock.  Under these circumstances, all

10   purchasers of Monolithic common stock during the Class Period suffered similar injury through

11   their purchases of Monolithic common stock at artificially inflated prices, and a presumption of

12   reliance applies.

13       63.    A presumption of reliance is also appropriate in this action under the Supreme

14   Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because plaintiff's

15   claims are based, in significant part, on defendants' material omissions.  Because this action

16   involves defendants' failure to disclose material adverse information regarding Monolithic's

17   business, operations, products, and risks, positive proof of reliance is not a prerequisite to recovery.

18   All that is necessary is that the facts withheld be material in the sense that a reasonable investor

19   might have considered them important in making investment decisions.  Given the importance of

20   defendants' material misstatements and omissions set forth above, that requirement is satisfied

21   here.

22   **LOSS CAUSATION/ECONOMIC LOSS**

23       64.    During the Class Period, as detailed herein, the defendants made false and

24   misleading statements and engaged in a scheme to deceive the market and a course of conduct that

25   artificially inflated the price of Monolithic common stock and operated as a fraud or deceit on

26   Class Period purchasers of Monolithic common stock by misrepresenting the value of the

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 16 -

1    Company's business and prospects in the Company's operations.  As these defendants'

2    misrepresentations and fraudulent conduct became apparent to the market and previously

3    undisclosed material risks materialized, the price of the Company's stock fell precipitously on

4    numerous occasions as the prior artificial inflation came out of the stock's price, as detailed herein.

5    As a result of their purchases of Monolithic common stock during the Class Period, plaintiff and

6    other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

7                              **CLASS ACTION ALLEGATIONS**

8            65.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

9    Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Monolithic common

10   stock during the Class Period (the "Class").  Excluded from the Class are defendants, the officers

11   and directors of the Company, at all relevant times, members of their immediate families, and their

12   legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had

13   a controlling interest.

14           66.    The members of the Class are so numerous that joinder of all members is

15   impracticable.  Throughout the Class Period, Monolithic common stock was actively traded on the

16   NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and can

17   only be ascertained through appropriate discovery, plaintiff believes that there could be hundreds

18   or thousands of members in the proposed Class.  Record owners and other members of the Class

19   may be identified from records maintained by Monolithic or its transfer agent and may be notified

20   of the pendency of this action by mail, using the form of notice similar to that customarily used in

21   securities class actions.

22           67.    Plaintiff's claims are typical of the claims of the members of the Class as all

23   members of the Class are similarly affected by defendants' wrongful conduct in violation of federal

24   law as complained of herein.

25           68.    Plaintiff will fairly and adequately protect the interests of the members of the Class

26   and has retained counsel competent and experienced in class and securities litigation.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 17 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

69.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether statements made by defendants during the Class Period misrepresented material facts about the business and operations of Monolithic;

(b)    whether defendants acted with scienter; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

70.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

71.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes, and artifices to defraud;

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 18 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900

1  (b)    made untrue statements of material fact or omitted to state material facts

2  necessary in order to make the statements made, in light of the circumstances under which they

3  were made, not misleading; or

4  (c)    engaged in acts, practices, and a course of business that operated as a fraud

5  or deceit upon plaintiff and others similarly situated in connection with their purchases of

6  Monolithic common stock during the Class Period.

7  74.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

8  the market, they paid artificially inflated prices for Monolithic common stock.  Plaintiff and the

9  Class would not have purchased Monolithic common stock at the prices they paid, or at all, if they

10  had been aware that the market price had been artificially and falsely inflated by defendants'

11  misleading statements.

12  75.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

13  other members of the Class suffered damages in connection with their purchases of Monolithic

14  common stock during the Class Period.

15  ## COUNT II

16  ### For Violation of §20(a) of the 1934 Act
   ### Against All Defendants

17  

18  76.    Plaintiff repeats and realleges each and every allegation contained in the foregoing

19  paragraphs as if fully set forth herein.

20  77.    During the Class Period, defendants acted as controlling persons of Monolithic

21  within the meaning of §20(a) of the 1934 Act.  By virtue of their positions and their power to

22  control public statements about Monolithic, the Individual Defendants had the power and ability

23  to control the actions of Monolithic and their employees.  Monolithic controlled the Individual

24  Defendants and all of its other officers and employees.  By reason of such conduct, defendants are

25  liable pursuant to §20(a) of the 1934 Act.

26  ## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

1      A.      Determining that this action is a proper class action, designating plaintiff as Lead

2  Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of

3  Civil Procedure and plaintiff's counsel as Lead Counsel;

4      B.      Awarding compensatory damages in favor of plaintiff and the other Class members

5  against all defendants, jointly and severally, for all damages sustained as a result of defendants'

6  wrongdoing, in an amount to be proven at trial, including interest thereon;

7      C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in

8  this action, including counsel fees and expert fees;

9      D.      Awarding rescission or a rescissory measure of damages; and

10      E.      Awarding such equitable/injunctive or other relief as the Court may deem just and

11  proper.

12                                    **JURY DEMAND**

13      Plaintiff demands a trial by jury.

14  DATED:  February 4, 2025                    KELLER ROHRBACK L.L.P.
                                                JULI E. FARRIS (WSBA # 17593)
15                                              DEREK W. LOESER (WSBA # 24274)

16

17                                              s/ Juli E. Farris
                                                _____
18                                              JULI E. FARRIS

19                                              1201 Third Avenue, Suite 3400
                                                Seattle, WA  98101-3052
20                                              Telephone:  206/623-1900
                                                jfarris@kellerrohrback.com
21                                              dloeser@kellerrohrback.com

22                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
23                                              SAMUEL H. RUDMAN
                                                58 South Service Road, Suite 200
24                                              Melville, NY  11747
                                                Telephone:  631/367-7100
25                                              srudman@rgrdlaw.com

26

COMPLAINT FOR VIOLATIONS OF THE                         KELLER ROHRBACK L.L.P.
                                                         1201 Third Avenue, Suite 3400
FEDERAL SECURITIES LAWS                                  Seattle, WA  98101-3052
                                                         Telephone:  206/623-1900
                            - 20 -

1
2
3
4
5
6

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
FRANCISCO J. MEJIA
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
bcochran@rgrdlaw.com
fmejia@rgrdlaw.com

7
8
9
10

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
cbdunn@asherkellylaw.com

11

Attorneys for Plaintiff

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

- 21 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA  98101-3052
Telephone:  206/623-1900

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Waterford Township General Employees Retirement System ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below: None.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___3___ day of February, 2025.

Waterford Township General Employees
Retirement System

By: _Andrew Mutch_____
       Andrew Mutch, Chairman

MONOLITHIC POWER

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 08/27/2024 | 169 | $943.16 |
| 09/19/2024 | 101 | $907.67 |

Prices listed are rounded up to two decimal places.