UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WATERFORD TOWNSHIP GENERAL EMPLOYEES RETIREMENT SYSTEM,<br><br>Plaintiff,<br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC., et al.,<br><br>Defendants. | CASE NO. C25-0220JLR<br><br>ORDER |

## I.   INTRODUCTION

Before the court are competing motions for appointment as lead plaintiff and for approval of lead counsel filed by Waterford Township General Employees Retirement System (the "Retirement System") (RS Mot. (Dkt. # 22); RS Reply (Dkt. # 29)) and Mirko Dardi (Dardi Mot. (Dkt. # 25); Dardi Reply (Dkt. # 30)). Each movant opposes the other's motion. (RS Resp. (Dkt. # 28); Dardi Resp. (Dkt. # 27).) The movants also

ORDER - 1

filed supplemental briefing at the court's request. (RS Supp. (Dkt. # 33); Dardi Supp. (Dkt. # 34); *see* 6/5/25 Order (Dkt. # 32).) The court has considered the movants' submissions, the relevant portions of the record, and the governing law. Being fully advised,[1] the court DENIES the Retirement System's motion and GRANTS Mr. Dardi's motion.

## II. BACKGROUND

The Retirement System filed this putative securities class action against Defendant Monolithic Power Systems, Inc. ("Monolithic") and two of its executive officers, Defendants Michael Hsing and Bernie Blegen (collectively, "Defendants"), on behalf of investors who purchased Monolithic common stock between February 8, 2024 and November 8, 2024, inclusive (the "Proposed Class Period"). (*See* Compl. (Dkt. # 1) ¶¶ 1, 65.) The Retirement System alleges that Defendants made materially false and misleading statements about the performance of Monolithic's Enterprise Data business unit, which artificially inflated the price of Monolithic stock and caused a substantial decline in the price of that stock when the falsehoods were later revealed. (*See generally id.*) More specifically, the Retirement System asserts that Monolithic made a partial disclosure on October 30, 2024, when it reported a significant decline in Enterprise Data revenue (*id.* ¶ 24); that the price of Monolithic stock nevertheless "remained artificially inflated" after October 30, 2024 "as [D]efendants continued to make material misstatements and omissions and to conceal the full truth regarding [Monolithic's]

---

[1] Neither movant requested oral argument, and the court finds that oral argument would not assist it in deciding the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

business, operations, and financial results" (*id.* ¶ 47); and that after a November 11, 2024 report revealed that Monolithic's key customer had cancelled half of its outstanding orders, the price of Monolithic stock fell again, resulting in a 30% drop from its Proposed Class Period high (*id.* ¶¶ 26-27, 51-53). The Retirement System brings claims on behalf of the putative class members for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (*See id.* ¶¶ 71-77.)

The Retirement System is a public pension fund that purchased Monolithic common stock during the Proposed Class Period. (Farris Decl. (Dkt. # 23) ¶ 2, Ex. B ("RS Certification"), at ¶ 4.) Mr. Dardi, an Italian citizen and a resident of the Philippines, is "the settlor, protector, and investment manager of the Dart Trust[,]" which is registered under the Cook Islands International Trusts Act 1984. (Dardi Decl. (Dkt. # 26-4) ¶¶ 2-3.) The Dart Trust also purchased Monolithic securities during the Proposed Class Period. (Block Decl. (Dkt. # 26) ¶ 2, Ex. B ("Dardi Certification"), at ¶ 5.) On March 19, 2025, the Trustee of the Dart Trust executed an assignment of all of the Dart Trust's claims arising from violations of federal security laws in connection with the purchase of Monolithic securities to Mr. Dardi and appointed Mr. Dardi the Dart Trust's attorney-in-fact with respect to such claims. (Dardi Certification ¶ 2; *see* Block Decl. ¶ 2, Ex. E ("Assignment").[2])

---

[2] Under the Assignment, the Trustee of the Dart Trust "irrevocably assigns, transfers, and sets over to Mirko Dardi, the Dart Trust's Protector and Settlor, title to, ownership of, and all rights, title and interest of the Dart Trust, in any and all claims, demands, and causes of action of any kind whatsoever which the Dart Trust has or may have arising from violations under the

1    The Retirement System filed this action on February 4, 2025, and published notice
2  of the action that same day in *Globe Newswire*, a national business-oriented wire service.
3  (Compl.; Farris Decl. ¶ 2, Ex. A.)  The Retirement System and Mr. Dardi filed the instant
4  motions to appoint lead plaintiff and approve lead counsel on April 7, 2025.  (*See* RS
5  Mot.; Dardi Mot.)  On June 5, 2025, the court ordered supplemental briefing regarding
6  the arguments Mr. Dardi raised in his reply.  (*See* 6/5/25 Order; RS Supp.; Dardi Supp.)
7  The motions are now fully briefed and ripe for decision.

## III.    ANALYSIS

The Private Securities Litigation Reform Act ("PSLRA") "instructs district courts to select as lead plaintiff [in a securities class action] the one 'most capable of adequately representing the interests of class members.'"  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  The PSLRA sets forth a three-step process for selecting the lead plaintiff.  *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021).

First, within 20 days of the filing of a securities class action, notice must be published advising putative class members of the pendency of the action, the claims asserted, the proposed class period, and the right of any class member to move to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Each proposed lead plaintiff must move for appointment within 60 days of the publication of that notice, and must include with its motion a "sworn certification indicating *inter alia* that the plaintiff did not purchase the security at issue at the direction of counsel or in order to participate in the action and that

---

federal securities laws of the United States of America in connection with the purchase of the publicly traded securities of Monolithic Power Systems, Inc." (Assignment.)

the plaintiff will not accept any payment for serving as the class representative beyond the plaintiff's pro rata share of any recovery, except for reasonable costs and expenses (including lost wages) directly related to the representation of the class." *Barua v. Zillow Grp., Inc.*, No. C21-1551TSZ, 2022 WL 474000, at *1 n.3 (W.D. Wash. Feb. 16, 2022) (citing 15 U.S.C. §§ 78u-4(a)(2), (4)).

Second, the court must identify which movant has the greatest alleged losses and determine whether that movant has made a prima facie showing of the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *In re Mersho*, 6 F.4th at 899 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *In re Cavanaugh*, 306 F.3d at 730. "At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." *In re Mersho*, 6 F.4th at 899 (citing *In re Cavanaugh*, 306 F.3d at 730). If the movant with the largest losses does not make a prima facie showing of typicality and adequacy, the court must then determine whether the movant with the next largest losses has met those requirements. *Id.*

At the third step, the process "turns adversarial" and other class members have "an opportunity to rebut the presumptive lead plaintiff's showing" that it satisfies typicality and adequacy. *In re Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (allowing other movants to rebut the presumption "upon proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately

representing the class"). "If, as a result of this process, the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy." *In re Cavanaugh*, 306 F.3d at 731.

The movant that satisfies the three-step process outlined above becomes the lead plaintiff and "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). If the lead plaintiff makes "a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009). The court has only "the limited power to accept or reject the lead plaintiff's selection[;]" thus, although the court may reject the lead plaintiff's choice of counsel, it does not have "the authority to select lead counsel of its own choosing." *Id.* at 709.

The court considers each step of this inquiry below.

A.  **Step 1: Procedural Requirements**

The Retirement System properly published notice of the action on February 4, 2025, the same day it filed its complaint. (*See* Farris Decl. ¶ 2, Ex. A.) In addition, both movants timely filed their motions to appoint lead plaintiff within 60 days of publication of that notice (*see generally* Dkt.) and each included with its motion the statutorily required certification (*see* RS Certification; Dardi Certification)). Accordingly, the court finds that both movants have satisfied the first step of the lead plaintiff inquiry.

**B.    Step 2:  Presumptive Lead Plaintiff**

At the second step, the court must identify the movant with the greatest alleged losses and determine whether that movant has made a prima facie showing of adequacy and typicality.  *In re Mersho*, 6 F.4th at 899.

    1.    <u>Largest Financial Stake</u>

The court must review the losses allegedly suffered by each movant to determine which has "the most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Courts consider four factors in determining the financial interests of the movants:  (1) the total shares purchased, (2) the net shares purchased, (3) the net funds expended, and (4) the approximate loss suffered.  *See Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011).  Of these factors, "courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss."  *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quotation omitted).

Here, the Retirement System claims losses totaling $78,970.55 and Mr. Dardi claims losses on behalf of the Dart Trust totaling $280,044.57.  (*See* Farris Decl. ¶ 2, Ex. C ("RS Losses"); Block Decl. ¶ 2, Ex. C ("Dardi Losses"); *see also* RS Mot. at 4; Dardi Mot. at 5.)  Neither movant challenges the other's calculation of its claimed losses.  (*See generally* RS Resp.; Dardi Resp.)  Mr. Dardi's claimed loss is thus approximately 3.5 times greater than the Retirement System's claimed loss.  Accordingly, the court concludes that Mr. Dardi has asserted the largest financial interest in this action, and the Retirement System the second largest.  *See Barua*, 2022 WL 474000, at *2 (considering

only the estimated loss factor in assessing financial interest where the relative losses alleged were undisputed and the largest estimated loss was far greater than the other movants' estimated losses).

### 2. Typicality and Adequacy

After the court identifies the plaintiff with the largest financial interest, its inquiry "must focus on that plaintiff alone" and is "limited to determining whether he satisfies the other statutory requirements." *In re Cavanaugh*, 306 F.3d at 732; *see id.* (stating that the PSLRA "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case"). Thus, having found that Mr. Dardi has the largest financial interest, the court must now determine whether he has made out a prima facie case of typicality and adequacy. The court may consider only the movant's pleadings and declarations when conducting this inquiry. *In re Mersho*, 6 F.4th at 899.

"Typicality is generally shown when a class member's claims 'arise from the same event or course of conduct which gave rise to the claims of the class members and are founded on the same legal theory.'" *Lewis v. CytoDyn, Inc.*, No. C21-5190BHS, 2021 WL 3709291, at *6 (W.D. Wash. Aug. 19, 2021) (quoting *Frias*, 835 F. Supp. 2d at 1075). Adequacy, meanwhile, is satisfied if "there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Knox*, 136 F. Supp. 3d at 1165 (quotation omitted); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (stating that the proposed lead plaintiff and their counsel must be willing to "prosecute the action vigorously on behalf of the class").

1   Having reviewed Mr. Dardi's declaration and certification, the court concludes
2   that Mr. Dardi has made out a prima facie case that he satisfies Rule 23(a).  First, Mr.
3   Dardi asserts that, as assignee of the Dart Trust's claims, he has standing to pursue those
4   claims.  (Dardi Mot. at 6 (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554
5   U.S. 269, 271 (2008)); *see* Dardi Certification ¶ 1; Assignment.)  Second, Mr. Dardi
6   avers that the claims assigned to him by the Dart Trust are typical of the class because the
7   Dart Trust purchased Monolithic stock during the Proposed Class Period "at allegedly
8   inflated prices and suffered damages when Defendants' alleged misconduct came to
9   light."  (Dardi Mot. at 8 (citing Dardi Certification; Dardi Losses).)  And third, Mr. Dardi
10  states that he and his counsel will adequately protect the interests of the class because he
11  "has a substantial financial interest in the case," is "committed to vigorously pursuing
12  claims on behalf of the class[,]" has selected qualified counsel experienced in securities
13  litigation, and "is not aware of any conflicts between his claims and those asserted by the
14  class."  (*Id.* (citing Dardi Decl.); *see also* Dardi Certification.)  In light of the foregoing,
15  the court concludes that Mr. Dardi is the presumptive lead plaintiff under the PLSRA.
16  *See, e.g.*, *Barua*, 2022 WL 474000, at *3 (concluding that movant with the largest
17  financial interest satisfied adequacy and typicality where his declaration "explained that
18  [movant] works as the president of a general engineering company, suffered substantial
19  losses while trading Zillow securities during the class period, is strongly motivated to
20  litigate vigorously and efficiently to maximize the recovery for himself and the putative
21  class, and understands the important role of a lead plaintiff").

### C. Step 3: Rebuttal

In the third step, other class members may rebut the presumptive lead plaintiff's showing that it satisfies typicality and adequacy. *In re Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "Competing movants must convince the district court that the presumptive lead plaintiff would not be adequate, not merely that the district court was wrong in determining that the prima facie elements of adequacy were met." *In re Mersho*, 6 F.4th at 901. The Retirement System bears the burden of affirmatively showing that Mr. Dardi will not adequately and fairly protect the class's interests. *In re Outerwall Inc. S'holder Litig.*, No. C16-1275JLR, 2017 WL 881382, at *7 (W.D. Wash. Mar. 6, 2017); *see also Doherty v. Pivotal Software, Inc.*, No. 19-CV-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019) ("The PSLRA requires 'proof' to overcome the presumption entitling the plaintiff with the largest financial interest in the litigation to appointment as lead plaintiff; speculative assertions are insufficient."). The court concludes that the Retirement System has not met this burden.

The Retirement System raises two key arguments in rebuttal. First, it argues that Mr. Dardi cannot satisfy typicality and adequacy and thus cannot serve as lead plaintiff because he "is subject to unique standing defenses[.]" (RS Resp. at 1 (first citing *In re Mersho*, 6 F.4th at 898-99; and then citing *In re Cavanaugh*, 306 F.3d at 729).) Second, the Retirement System argues that the Dart Trust's purchase of nearly all of its Monolithic shares after the first alleged partial disclosure risks "'undermin[ing] [Mr. Dardi's] ability to assert the fraud-on-the-market presumption of reliance'" and, as a result, would require "'proof of individualized reliance from each member of the putative

class . . . which would effectively preclude class certification.'" (*Id.* at 2 (quoting *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019)).) The court addresses each argument below.

1. Standing

The Retirement System argues that Mr. Dardi either lacks standing to be appointed lead plaintiff or faces unique standing defenses because (1) he did not personally suffer losses based on an investment in Monolithic securities but is instead "asserting as his own financial interest the losses of the Dart Trust[;]" and (2) the Assignment's effectiveness is uncertain given the "complex interplay of Cook Islands, Washington State, Philippines, and Italian law." (RS Resp. at 1.)

The court can easily dispose of the Retirement System's first standing argument. "[T]he minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)). An "assignment of claims transfers legal title or ownership of those claims" and thus "fulfills the constitutional requirement of an 'injury-in-fact.'" *W.R. Huff*, 549 F.3d at 108. This is because "the assignee of a cause of action stands in the shoes of the assignor, and unquestionably has the same standing to file a complaint that the assignor could have filed." *Northstar*, 779 F.3d at 1047 (first citing *Hoffeld v. United States*, 186 U.S. 273, 276 (1902); and then citing *Sprint Commc'ns Co. v. APCC Servs.*, 554 U.S. 269, 271 (2008)); *see also Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2021 WL

3861454, at *6 (N.D. Cal. Aug. 30, 2021) (noting that "courts in the Ninth Circuit and around the country frequently appoint lead plaintiffs who received all or a portion of their claims via assignment"); *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2013 WL 6354597, at *3 (N.D. Cal. Dec. 3, 2013) (appointing an assignee as lead plaintiff and compiling cases "holding that . . . formal assignments of legal claims could confer . . . standing" on third parties to pursue securities claims).  Based on this authority, the court rejects the Retirement System's assertion that Mr. Dardi faces unique standing defenses based simply on his status as assignee of the Dart Trust's claims.

        The Retirement System also argues that Mr. Dardi is subject to unique standing defenses because the validity of the Assignment may be based on Cook Islands law and may be affected by the laws of other jurisdictions.  (RS Resp. at 7-9.)  The Retirement System's assertion that the Assignment might be ineffective, however, is purely speculative.  *See In re Mersho*, 6 F.4th at 901-02 ("Misgivings are not evidence that cast 'genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff.'") (quoting *In re Cavanaugh*, 306 F.3d at 733) (alteration in original); *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953-EJD, 2022 WL 4099454, at *3 (N.D. Cal. Sept. 7, 2022) (finding competing movant "failed to provide evidence contesting the validity of the assignment; its speculation about the validity is insufficient to rebut the lead plaintiff presumption").  The Retirement System has not provided any textual analysis or expert testimony regarding the interpretation of Cook Islands law to assist the court's consideration of the Assignment; meanwhile, the Trustee of the Dart Trust has provided a declaration explaining that he has power to assign and transfer legal

claims. *See, e.g.*, *Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *8 (N.D. Cal. Feb. 14, 2008) (finding competing movant did not meet its burden on rebuttal where it provided no expert testimony or textual analysis regarding the interpretation of foreign law); (2d Block Decl. (Dkt. # 31) ¶ 2, Ex. C (Trustee's declaration)).

Finally, the court concludes that the Retirement System's reliance on a recent case in which a district court declined to appoint the Dart Trust lead plaintiff is misplaced. (*See* RS Resp. at 5-6, 9 (discussing *Davoodi v. Zeta Global Holdings Corp.*, No. 24-CV-8961 (DEH), 2025 WL 622686 (S.D.N.Y. Feb. 26, 2025)).) In *Davoodi v. Zeta Global Holdings Corp.*, the district court concluded that the Dart Trust had failed to make a preliminary showing of standing because the Trustee's grant to Mr. Dardi of power of attorney to represent the Dart Trust in litigation did not confer on Mr. Dardi standing to sue. *Davoodi*, 2025 WL 622686, at *2 (citing *W.R. Huff*, 549 F.3d at 108). Here, in contrast, the Trustee of the Dart Trust assigned to Mr. Dardi the Dart Trust's claims against Monolithic, in addition to granting him power of attorney. (*See* Assignment.) Thus, because the "assignment of claims transfers legal title" of the claims to Mr. Dardi, the assignment fulfills the injury-in-fact requirement and confers standing upon Mr. Dardi. *W.R. Huff*, 549 F.3d at 108 (holding an assignment of claims transfers legal title of the claims to the assignee and thus "fulfills the constitutional requirement of an 'injury-in-fact'").

1     For these reasons, the court concludes that the Retirement System has not met its
2  burden to demonstrate unique standing defenses that would rebut Mr. Dardi's status as
3  presumptive lead plaintiff.

4     2.   Post-Disclosure Purchases

5     The Retirement System also asserts that the Dart Trust's claims are not typical of
6  the members of the proposed class because the Dart Trust purchased just one share of
7  Monolithic stock before Defendants' October 30, 2024 partial disclosure and purchased
8  its remaining 1,500 shares on October 31, 2024, the day after the partial disclosure.  (RS
9  Resp. at 9-11; *see* Dardi Losses.)  The court is not persuaded.

10    "[T]he substantial majority of courts that have addressed the propriety of class
11 certification based on the timing of the class representative's sale or purchases have
12 found . . . that the timing of the transactions does not necessarily create fundamentally
13 divergent interests with the putative class."  *In re Zillow Grp., Inc. Sec. Litig.*, No.
14 C17-1387JCC, 2020 WL 6318692, at *5 (W.D. Wash. Oct. 28, 2020) (quotation omitted)
15 (collecting cases); *see also Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 366 (N.D. Cal.
16 2024) (observing that "the weight of authority 'favors the position that the purchase of
17 stock after a partial disclosure is not a per-se bar to satisfying the typicality
18 requirement'") (quoting *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal.
19 2009)).  For example, in *In re Zillow Grp., Inc. Sec. Litig.*, this court held under the more
20 rigorous inquiry made at class certification that named plaintiffs who purchased securities
21 after the defendant made its first corrective disclosure satisfied typicality because, "[l]ike
22 other members of the proposed class, [they] purchased Zillow securities during the class

period at prices they allege were artificially inflated by [the defendants'] false or misleading statements and suffered damages when the price of securities declined because the truth was revealed." *In re Zillow*, 2020 WL 6318692, at *5.

Here, the Retirement System alleges that the price of Monolithic stock "remained artificially inflated" after the October 30, 2024 disclosure "as [D]efendants continued to make material misstatements and omissions and to conceal the full truth regarding [Monolithic's] business, operations, and financial results." (Compl. ¶ 47.)  It further alleges that although the price of Monolithic stock fell after the October 30, 2024 disclosure, it fell again after the November 11, 2024 disclosure. (*Id.* ¶¶ 51-53.) Thus, as in *In re Zillow*, the Dart Trust's October 31, 2024 purchase of Monolithic stock does not destroy typicality because (1) the purchase was made during the Proposed Class Period while the stock price was allegedly still "artificially inflated" by Defendants' continuing misstatements, and (2) the Dart Trust suffered losses when the price of Monolithic stock fell after the second disclosure on November 11, 2024.  (Compl. ¶ 47); *see In re Zillow*, 2020 WL 6318692, at *5.

The Retirement System cites several cases in which courts concluded that a presumptive lead plaintiff was subject to unique defenses based on its purchase of stock after a partial disclosure of the defendant's fraud. (*See* RS Resp. at 10 (citing cases).) These cases do not persuade the court to depart from this circuit's majority view. *See Weston*, 348 F.R.D. at 366; *see also In re Zillow*, 2020 WL 6318692, at *5 (compiling cases concluding that the timing of the class representative's transactions "does not necessarily create fundamentally divergent interests with the putative class"). Therefore,

the court rejects the Retirement System's second basis for rebuttal and appoints Mr. Dardi lead plaintiff.

D.    **Approval of Lead Plaintiff's Choice of Counsel**

Once the court has designated a lead plaintiff, the plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, Mr. Dardi has selected Block & Leviton LLP as lead counsel and Tousley Brain Stephens PLLC as local counsel. (Dardi Mot. at 8-9.) Block & Leviton represents that it has been appointed lead or co-lead counsel in dozens of securities litigation matters and has received excellent results for its clients. (See Block Decl. ¶ 2, Ex. F (Block & Leviton firm resume).) Tousley Brain Stephens has been appointed class counsel or liaison counsel for multiple securities class actions in this District. (See Block Decl. ¶ 2, Ex. G (Tousley Brain Stephens firm resume).)

Having considered Mr. Dardi's selected counsel's experience, the court concludes that Block & Leviton and Tousley Brain Stephens are qualified to serve as lead and local counsel. Furthermore, the Retirement System raised no objections to the appointment of Block & Leviton and Tousley Brain Stephens. (See generally RS Resp.) Accordingly, the court approves Mr. Dardi's selection of Block & Leviton as lead counsel and Tousley Brain Stephens as local counsel.

IV.    **CONCLUSION**

For the foregoing reasons, the court GRANTS Mr. Dardi's motion to appoint lead plaintiff and counsel (Dkt. # 25) and DENIES the Retirement System's motion to appoint lead plaintiff and counsel (Dkt. # 22). The court APPOINTS Mirko Dardi as lead

plaintiff, Block & Leviton LLP as lead counsel, and Tousley Brain Stephens, PLLC as local counsel.

Lead counsel and local counsel shall manage the prosecution of this litigation. Lead counsel and local counsel are to avoid duplicative or unproductive activities and are hereby vested by the court with the responsibilities that include, without limitation, the following: (1) to prepare all pleadings; (2) to direct and coordinate the briefing and arguing of motions in accordance with the schedules set by the orders and rules of this court; (3) to coordinate the selection of counsel to act as a spokesperson at pretrial conferences; (4) to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time; (5) to initiate and direct discovery; (6) to prepare the case for trial; (7) to engage in settlement negotiations on behalf of lead plaintiff and the class; and (8) to supervise any other matters concerning the prosecution, resolution or settlement of this action.

Consistent with the court's March 5, 2025 order (Dkt. # 17), the court ORDERS the parties to file a joint status report that proposes a schedule for the filing of an amended complaint, any answer to the amended complaint or motion to dismiss the same, and any motion for class certification by no later than **September 5, 2025.**

Dated this 25th day of August, 2025.

JAMES L. ROBART
United States District Judge