The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WATERFORD TOWNSHIP GENERAL
EMPLOYEES RETIREMENT SYSTEM, on
Behalf of Itself and All Others Similarly
Situated,

            Plaintiff,

    v.

MONOLITHIC POWER SYSTEMS, INC.,
MICHAEL HSING, and BERNIE BLEGEN,

           Defendants.

Case No. 2:25-cv-00220-JLR

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT

NOTE ON MOTION CALENDAR:
March 3, 2026[1]

---

[1] See ECF-37.

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I.    PLAINTIFF FAILS TO PLEAD FALSITY WITH PARTICULARITY. .......................... 1

    A.    The FAC does not allege contemporaneous falsity. ....................................... 1

    B.    Opinions and puffery are not actionable........................................................ 4

    C.    The challenged statements were not rendered misleading by any alleged omission. ........................................................................................................ 5

II.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ................... 6

    A.    The stock sales do not support scienter. ......................................................... 6

    B.    The core operations doctrine does not support scienter. ................................ 9

    C.    Temporal proximity does not support scienter. ........................................... 11

    D.    Holistic review confirms the non-culpable inferences are more cogent. ..... 12

CONCLUSION........................................................................................................ 13

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

-i-

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Applestein v. Medivation, Inc.*,
   861 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................ 8

*Azar v. Yelp, Inc.*,
   2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...................................................... 7

*Chan v. New Oriental Educ. & Tech. Grp. Inc.*,
   2019 WL 2865452 (D.N.J. July 3, 2019) .............................................................. 3

*City of Roseville Emp.' Ret. Sys. v. Sterling Fin. Corp.*,
   963 F. Supp. 2d 1092 (E.D. Wash. 2013) ............................................................. 2

*Garbaccio v. Starbucks Corp.*,
   --- F. Supp. 3d ---, 2025 WL 3228275 (W.D. Wash. Nov. 19, 2025) ................... 3

*Hessefort v. Super Micro Computer, Inc.*,
   2020 WL 1551140 (N.D. Cal. Mar. 23, 2020) ...................................................... 9

*In re Allaire Corp. Sec. Litig.*,
   224 F. Supp. 2d 319 (D. Mass. 2002) ................................................................... 2

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
   2017 WL 563422 (C.D. Cal. Sept. 20, 2017) ....................................................... 5

*In re Nektar Therapeutics*,
   2020 WL 3962004 (N.D. Cal. July 13, 2020) ....................................................... 7

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ............................................................................ 10

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .............................................................................. 5

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................................ 8

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
   45 F.4th 1236 (10th Cir. 2022) ............................................................................. 7

*Joyce v. Amazon.com, Inc.*,
   2025 WL 835054 (W.D. Wash. Mar. 17, 2025) ................................................. 11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................... 7, 8

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

-ii-

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nursing Home Pension Fund v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ................................................................................ 2, 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) .................................................................................................. 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................................................. 9

*Reckstin Family Trust v. C3.ai, Inc.*,
  718 F. Supp. 3d 949 (N.D. Cal. 2024) .................................................................... 10

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ......................................................... 5

*Rodriguez v. Gigamon Inc.*,
  325 F. Supp. 3d 1041 (N.D. Cal. 2018) ................................................................ 7, 8

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .................................................................................... 2

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) .................................................................................. 5

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ................................................................................ 9, 10

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................. 6, 12

*ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*,
  411 F. Supp. 3d 486 (D. Ariz. 2019) ....................................................................... 5

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
  759 F. Supp. 3d 926 (D. Ariz. 2024) ....................................................................... 9

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) .................................................................... 5, 6

*Weston Family P'ship LLLP v. Twitter*,
  29 F.4th 611 (9th Cir. 2022) .................................................................................... 6

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .................................................................................. 4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) ...................................................... 8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................. 13

**INTRODUCTION[2]**

Plaintiff's First Amended Complaint ("FAC") should be dismissed with prejudice because its securities claims are textbook fraud-by-hindsight, built on post-hoc conjecture and hearsay rather than contemporaneous, particularized facts. Plaintiff posits that a November 2024 third-party report speculating about emerging issues with a new NVIDIA platform somehow shows that statements in February 2024 about "resolv[ing]" issues with a different NVIDIA platform "must have been" false when made. But the FAC alleges no communications or witnesses suggesting any statement was false when made.

Likewise, Plaintiff's scienter theory collapses upon itself. The Individual Defendants' stock sales—the keystone of the FAC's scienter case—were executed under publicly-available Rule 10b5-1 trading plans adopted six months before the Class Period. The FAC falsely alleges the contrary because Plaintiff knows sales made pursuant to a Rule 10b5-1 plan are not indicative of scienter.

The "core operations" doctrine cannot fill the void. Speculation that executives "must have known" based on their positions is no substitute for particularized facts demonstrating actual knowledge of information contradicting the challenged statements. Plaintiff alleges nothing suggesting that Defendants knew material quality issues persisted but said otherwise. The nonculpable inference—that Defendants accurately reported the then-current state of affairs—is cogent, compelling, and fatal to the FAC. It should be dismissed with prejudice.

**ARGUMENT**

**I.    PLAINTIFF FAILS TO PLEAD FALSITY WITH PARTICULARITY.**

**A.    The FAC does not allege contemporaneous falsity.**

Plaintiff principally challenges statements by CEO Michael Hsing on a February 7, 2024 earnings call. Dkt. 49 at 5-10. In response to analyst questions, he said that "[A]t this time, we

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in Defendants' Motion to Dismiss, Dkt. 46. All internal citations and quotations are omitted and all emphases are added.

DEFS.' REPLY IN SUPP. OF                          - 1 -                    FENNEMORE CRAIG P.C.
MOT. TO DISMISS                                                           999 Third Avenue, Suite 600
(2:25-cv-00220-JLR)                                                       Seattle, WA 98104 | 206.749.0500

want to solve all the problems and we believe we resolve all these issues and during this fast ramp" (Dkt. 48-1; ¶61),[3] and that "[w]e had some issues on the Stage 1s and we had some design wins and very small volumes in different systems, actually.  And now we don't have – all these issues are resolved" (*id.*; ¶66).  Plaintiff asserts those statements were false, but does not dispute that the FAC fails to allege "specific ***contemporaneous*** statements or conditions" demonstrating that they were false-when-made.  *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

Instead, according to Plaintiff, because the Edgewater report (Dkt. 48-5) identified supposed issues in November 2024, the very same issues must have existed in February 2024.  Dkt. 49 at 13-16.  But that is textbook fraud-by-hindsight, precisely what the PSLRA prohibits.  *E.g.*, *City of Roseville Emp.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wash. 2013).  Plaintiff does not dispute that the most reliable method to establish falsity is through "contemporaneous reports or data, available to the party, which contradict the statement."  *Nursing Home Pension Fund v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).  Yet the FAC has no particularized allegation about any contemporaneous communications or documents contradicting Mr. Hsing's statement as of February 7, 2024.  Likewise, "[n]o confidential witness (CW) has come forward to say that Defendants knew [of any unresolved issue], or that they were deliberately indifferent to the [issue]."  *City of Roseville*, 963 F. Supp. 2d at 1119.  That void is fatal.

The Opposition attempts to salvage this deficiency by arguing that the November 2024 Edgewater report "demonstrates" falsity as of February 2024.  Dkt. 49 at 7.  Plaintiff relies on *In re Allaire Corporation Securities Litigation*, where defendants claimed to have "successfully" beta tested new software; later that month, the software was released and was so fundamentally defective as to be inoperable.  224 F. Supp. 2d 319, 328-29 (D. Mass. 2002).  Management's knowledge there was supported by particularized facts such as customer emails, internal

---

[3] Defendants address Plaintiff's objection to Defendants' Request for Judicial Notice and Incorporation by Reference in the contemporaneously filed reply in support of the Request.

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

- 2 -

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

communications regarding fixes, and customer service records. *Id.* at 329. After the product's launch, defendants immediately began a "campaign" to sell their shares, despite never having engaged in open market sales before. *Id.* at 329, 331. Nothing remotely similar is alleged here.

Moreover, Ninth Circuit courts reject sleight-of-hand efforts to evade the prohibition on fraud-by-hindsight. In *Garbaccio v. Starbucks Corporation*, the plaintiffs alleged that a May 2024 Bloomberg article showed statements on a November 2023 earnings call about increased store traffic were false. --- F. Supp. 3d ---, 2025 WL 3228275, at *11 (W.D. Wash. Nov. 19, 2025). Judge Chun rejected that theory because the 2024 article failed to "provide any 'contemporaneous facts'" contradicting the statements as of 2023, *id.* at *13, illustrating that a later article or report must show the challenged statement was false at the time made—not that circumstances changed or new facts emerged thereafter. That principle applies squarely here. The challenged statement concerns "issues" as of February 2024 with an unidentified "Stage 1" product used in NVIDIA's Hopper platform. ¶66. Nine months later, Edgewater reported "hear[ing]" from unidentified sources that—***"[o]ver the last few weeks"***—there "[a]pparently … is an issue with" MPS's PMICs on a new, different Blackwell platform. Dkt. 48-5 at 2.

Allegations drawn from a third-party research note "should be credited only to the extent … they are sufficiently particular and detailed to indicate their reliability." *Garbaccio*, 2025 WL 3228275, at *11. Edgewater's report—based on unsourced, anonymous "feedback" from sources other than MPS and NVIDIA about unspecified "issues"—is unparticularized. *Chan v. New Oriental Educ. & Tech. Grp. Inc.*, 2019 WL 2865452, at *7 (D.N.J. July 3, 2019).

More importantly, nothing in the Edgewater report contradicts the February 7, 2024 statement. Edgewater reported that problems had emerged "[o]ver the last few weeks," not that problems had persisted since February 2024. The report's anonymous insinuations about issues in higher-wattage Blackwell platforms relate to a later product generation with different power requirements than the Hopper platform Mr. Hsing addressed. Plaintiff argues the "issue" could not have been "on again, off again"—but that misunderstands the inherently iterative nature of

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

- 3 -

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

the design process. Dkt. 49 at 9. During qualification and development work, issues routinely arise and are resolved, only for new challenges to emerge as products advance to higher specifications. It is entirely consistent with this cyclical process that MPS might address issues for chips operating at 500-600W on Hopper, only for different challenges to manifest months later with chips operating at 1,000W-1,200W for Blackwell. This is not securities fraud. It reflects the nature of the design process.

> ## B.  Opinions and puffery are not actionable.

The other challenged statements are non-actionable opinions and puffery, in addition to not being false-when-made. On February 7, 2024, Mr. Hsing stated that, with respect to costs, "we *want* to solve all the problems and we *believe* we resolve all these issues and during this fast ramp." ¶¶60-61; Dkt. 48-1 at 9. This statement was not false, *first*, because it was about **costs**, not "quality control issues" as Plaintiff wrongly asserts. Dkt. 49 at 9. And Plaintiff does not allege any unaddressed cost issues as of February 2024.

*Second*, even if misconstrued to address quality control, a statement that "we believe" problems have been solved is a quintessential non-actionable opinion. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194-95 (9th Cir. 2021). Plaintiff argues that the statement contained an embedded, "objectively verifiable fact," Dkt. 49 at 9, but that misconstrues *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). A statement can contain an opinion and an embedded fact, *e.g.*: "I believe our TVs have the highest resolution available" (opinion), "because we use a patented technology to which our competitors do not have access" (fact). *Id.* at 185. Here, the challenged statement contained only an opinion.

*Third*, Plaintiff fails to plead any contemporaneous fact demonstrating that Mr. Hsing's statement was false when made, as explained in Part A *supra*.

The only other affirmative statements in Plaintiff's Opposition are classic puffery or opinion: the claim that MPS "want[s] to continue to position ourselves as the leader," statements that MPS's solutions are the "best" and "most power efficient," and the opinion that its

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

- 4 -

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

Enterprise Data business "will grow." (¶¶70, 79; Dkt. 48-2 at 6; Dkt. 48-4 at 8.) Plaintiff does not address any of the cases in Defendants' motion finding similar statements to be non-actionable. *See also, e.g.*, *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 563422, at *4 (C.D. Cal. Sept. 20, 2017).

Instead, Plaintiff invokes cases where statements were actionable because "they provided a concrete description of the past and present state" of the defendant's business. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017). The statements in Plaintiff's cases—such as that the defendant had "completed" a software product that was incomplete (*Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *9 (C.D. Cal. Feb. 27, 2015))—are not remotely akin to the challenged statement here. Plaintiff cites no case suggesting that describing one's product as the "best" or aspiring to be a "leader" is actionable; the law is to the contrary. *E.g.*, *ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, 411 F. Supp. 3d 486, 501 (D. Ariz. 2019); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998).

**C.    The challenged statements were not rendered misleading by any alleged omission.**

Having failed to identify any affirmative misstatement, Plaintiff pivots, arguing that Defendants "misleadingly omitted the ongoing risk that the undisclosed quality control issues could hurt Monolithic's relationship with Nvidia." Dkt. 49 at 10. Plaintiff's omission theory suffers from the same fundamental defect as its misrepresentation theory: Plaintiff "must demonstrate that the omitted information existed at the time" of the challenged statement and, second, that the speaker knew as much—and the FAC does neither. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009).

Plaintiff's Opposition identifies no contemporaneous facts demonstrating that a risk to the NVIDIA relationship existed at the time of the May 1, 2024 statement that MPS was "at the front of the design cycle, we're consulted, we're integrated in fact, with the development of the next generation of products." ¶70. The FAC does not make a single allegation about any

contemporaneous document or customer communication showing that, as of May 1, 2024, NVIDIA had curtailed MPS's role in next-generation designs—far less that Defendants knew so.

Likewise, Plaintiff alleges no contemporaneous facts showing that MPS's relationship with NVIDIA was "damaged" as of August 1, 2024, when Mr. Blegen described the past quarter's revenue and the factors that drove those results—historical facts that Plaintiff does not challenge. ¶73; *see also Wenger*, 2 F. Supp. 2d at 1245 ("Disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.").

Plaintiff's omission theory rests on the Edgewater report, which purportedly shows NVIDIA placing rush orders with other suppliers. Dkt. 48-5. Plaintiff offers no explanation for how MPS could have known in May or August 2024 about events occurring "[o]ver the last few weeks" before November 2024. *See Weston Family P'ship LLLP v. Twitter*, 29 F.4th 611, 619 (9th Cir. 2022). Moreover, the report identifies issues with Blackwell products at higher wattage in late 2024, not Hopper products in early 2024. Finally, the FAC contains no particularized facts showing MPS knew of quality issues after February 2024.

## II. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

Plaintiff's securities fraud claims independently fail because the FAC does not allege facts giving rise to a strong, cogent, and compelling inference that Defendants acted with an intent to defraud or with deliberate recklessness. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The FAC relies principally on stock sales by the Individual Defendants. But each of these sales was either made to cover taxes on vesting restricted stock or executed pursuant to a Rule 10b5-1 trading plan adopted months before the Class Period— circumstances that courts routinely hold weigh against scienter.

### A. The stock sales do not support scienter.

The FAC alleged that "none of" the Individual Defendants' "stock sales during the Class Period were made pursuant to a previously entered 10b5-1 Plan." ¶¶98, 121. Those allegations

were false, as shown by SEC filings incorporated by reference into the FAC.  In truth, **every** challenged stock sale was executed to cover taxes on the vesting of restricted stock or was pursuant to a Rule 10b5-1 trading plan executed six months before the Class Period commenced. *See* Dkt. 48-21 at 5.

Sales under a pre-established Rule 10b5-1 plan "do not support a strong inference of scienter." *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1056 (N.D. Cal. 2018).  Where a Rule 10b5-1 plan was adopted before the Class Period, courts routinely find that the plan "weighs against an inference of scienter." *In re Nektar Therapeutics*, 2020 WL 3962004, at *16 (N.D. Cal. July 13, 2020); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008).  Executives who adopted trading plans six months before alleged misconduct could not have structured those plans to exploit material nonpublic information that, by Plaintiff's own theory, did not yet exist.  That distinguishes Plaintiff's cited case, where plaintiffs alleged the "defendant was allegedly motivated to misrepresent or withhold material information to affect a stock price in anticipation of a previously scheduled trade" under a 10b5-1 plan.  *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1266 (10th Cir. 2022).

Plaintiff contends that the 10b5-1 plans cannot defeat scienter absent disclosure of the plans' terms.  Dkt. 49 at 26.  Not so.  In Plaintiff's cited case, the court acknowledged that "stock sales made 'according to pre-determined plans may rebut an inference of scienter,'" but observed that "nothing … establishes when precisely the trading plan was adopted," which was problematic because the plan could have been adopted after the officers became aware of material nonpublic information.  *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *18 (N.D. Cal. Nov. 27, 2018).  Here, by contrast, the Rule 10b5-1 plans were adopted six months before the Class Period, and the FAC does not allege the plans were not entered into in good faith, the Individual Defendants were in possession of material nonpublic information at the time of adoption, or that the supposed "true" facts revealed by the Edgewater report existed then.

Plaintiff's characterization of the trades as "unusual" ignores undisputed facts.  Mr. Hsing sold just 6% of his MPS holdings, ¶117, which is not suspicious under any measure.  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999).  Mr. Blegen allegedly sold 33% of his shareholdings.  ¶143.  Typically, "larger sales amounts" than "only" 37% of a defendant's holdings are necessary to support scienter.  *Metzler*, 540 F.3d at 1067; *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1042 n.2 (N.D. Cal. 2012) (sale of "approximately 38% of [officer's] holdings" was insufficient to support a scienter inference).  Plaintiff's focus on gross dollar proceeds does not support a scienter inference, either.  The Ninth Circuit held that a CEO's sale of the "truly astronomical figure" of $900 million in stock, where he had not sold any shares the five years prior, supported a scienter inference.  *Nursing Home*, 380 F.3d at 1232.  The amounts here ($44.2 million for Hsing and $21.9 million for Blegen) "are hardly comparable." *Rodriguez*, 325 F. Supp. 3d at 1057.

Nor is there anything unusual about the timing of the trades.  Plaintiff concedes that "both Individual Defendants traded at a 'steady cadence'" pursuant to their stock trading plans.  Dkt. 49 at 15.  Conducting trades following quarterly earnings releases is "common[]" practice to **comply** with federal securities law and cannot support a strong scienter inference.  *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1127 (C.D. Cal. 2005).

Finally, Plaintiff argues that Defendants' sales were out of line because they did not have Rule 10b5-1 plans in the previous two years.  Dkt. 49 at 16.  The premise that executives must maintain 10b5-1 plans consistently or else any later adoption becomes "suspicious" finds no support in law or logic.  The governing test is whether sales were "dramatically out of line with prior trading practices at times calculated *to maximize the personal benefit from undisclosed inside information.*" *Silicon Graphics*, 183 F.3d at 986.  The Individual Defendants' consistent, predetermined sales schedule strongly suggests orderly compliance rather than an attempt to deceive shareholders.

**B.    The core operations doctrine does not support scienter.**

According to Plaintiff, because Mr. Hsing "acknowledged" awareness of certain issues with Hopper products and stated those issues had been resolved, he must have known his statement was false as to future problems with Blackwell.  Dkt. 49 at 20-21.  If awareness of a resolved problem were sufficient to establish scienter for a later problem with a different product, then every executive who ever fixed a product issue would be presumptively liable for fraud any time a subsequent issue arose, regardless of whether they had any knowledge of the new problem.  Such a standard would transform routine corporate problem-solving into evidence of fraudulent intent, a result the PSLRA plainly does not countenance.  The core operations doctrine provides no support for this circular reasoning.

Under the first prong of the core operations doctrine, scienter may be inferred only where particularized allegations suggest defendants had actual access to information contradicting their statements.  *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008).  A plaintiff "must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations … or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).  General awareness of day-to-day operations is insufficient; the complaint must allege particularized facts linking defendants to knowledge of the "particular suspect transactions." *Hessefort v. Super Micro Computer, Inc.*, 2020 WL 1551140, at *9 (N.D. Cal. Mar. 23, 2020).

*United Association National Pension Fund v. Carvana Co.*, on which Plaintiff relies, illustrates why scienter fails here.  There, the defendants made granular representations about Carvana's title and registration compliance, falsely claiming that any problems were confined to North Carolina, despite knowing that multiple states had commenced investigations for non-compliance with those laws.  759 F. Supp. 3d 926, 957, 973-74 (D. Ariz. 2024).  Here, by contrast, the FAC alleges no contemporaneous facts whatsoever demonstrating that Stage 1

issues were unresolved as of February 2024. Courts reject the conclusion that because an executive discusses a topic, he "must have" had access to information that contradicted his statements on that topic, and so should this Court. *See, e.g.*, *Reckstin Family Trust v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 983-84 (N.D. Cal. 2024) (no scienter where officer represented that an ally's entire 12,000-member salesforce was selling the defendant's products when, in fact, it was not; the complaint lacked particularized allegations that the officer had actual "access to information that contradicted the alleged misstatements").

The second prong applies only in "exceedingly rare" cases where the nature of the relevant fact is of such prominence that it would be literally "absurd" to suggest management lacked knowledge of it. *Killinger*, 542 F.3d at 785-86 & n.3; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063-64 (9th Cir. 2014) (affirming no scienter where allegations concerned company's "flagship product" and "two largest customers"). Courts reserve this second prong for facts so company-defining that a defendant's ignorance would strain credulity—not for the kind of indirect and evolving business dynamics alleged here. The weakness of Plaintiff's theory is confirmed when one asks the threshold question: What information were Defendants supposed to have known, and when? Neither the FAC nor Plaintiff's Opposition answers this question with any precision.

Regardless, the second prong does not apply here, however the allegedly "absurd" information is characterized. Plaintiff may mean it would be absurd for Defendants not to know that issues persisted with Stage 1 products after February 2024. But the FAC does not allege that NVIDIA ever raised concerns with Stage 1 products after February 2024, nor does it allege a single communication with or about NVIDIA, or any customer complaint, or qualification failure from that period. In fact, the FAC alleges nothing about any "issue" before Edgewater's report—published nine months after the challenged statements were made—and that report concerned a different platform operating at different power specifications.

DEFS.' REPLY IN SUPP. OF                    - 10 -                    FENNEMORE CRAIG P.C.
MOT. TO DISMISS                                                       999 Third Avenue, Suite 600
(2:25-cv-00220-JLR)                                                   Seattle, WA 98104 | 206.749.0500

Likewise, nothing supports the theory that it would be "absurd" for Defendants to lack knowledge that MPS's relationship with NVIDIA was in "danger."  MPS did not sell directly to NVIDIA. ¶54. Instead, third-party assemblers integrated MPS components into products before they were incorporated into NVIDIA's platforms.  ¶55.  In such an indirect supply chain, purchasing decisions are iterative, confidential, and often not communicated to upstream suppliers like MPS.  The FAC identifies nothing indicating Defendants were ever informed of a definitive reallocation of NVIDIA's business.  This absence of particularized factual allegations confirms that Plaintiff's theory rests on speculation, not the kind of "exceedingly rare" circumstances that would make management's ignorance absurd.

### C.    Temporal proximity does not support scienter.

Plaintiff's *ipse dixit* that the nine-month interval between the February 2024 statements and the November 2024 Edgewater report supports a scienter inference is legally and factually misplaced.  Courts consistently find that "temporal proximity between allegedly false statements and a corrective disclosure, without more, cannot support a finding of scienter."  *Joyce v. Amazon.com, Inc.*, 2025 WL 835054, at *14 (W.D. Wash. Mar. 17, 2025).

Plaintiff's reliance on cases where time periods contributed to scienter findings only underscores the weakness of Plaintiff's position.  Those cases involved "the relatively constant, long-term nature of the information." *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1148 (N.D. Cal. 2017).  Here, the information was inherently fluid and evolving.  The FAC describes a fast-moving transition from supplying products for one platform (Hopper) to developing a new product for a more demanding platform (Blackwell).  In this fast-moving, dynamic environment, circumstances could change significantly over nine months.

Moreover, as Plaintiff acknowledges, temporal proximity must be considered in light of "the nature of the problems concealed by those statements."  Dkt. 49 at 24.  The alleged quality issues involved sophisticated PMICs operating at varying wattages across multiple GPU architectures.  The logical explanation is the most cogent, nonculpable inference:  engineering

challenges could be addressed in February 2024 on one customer platform and new challenges could emerge by November 2024 on a different customer platform.

### D.   Holistic review confirms the non-culpable inferences are more cogent.

When all facts alleged are "taken collectively," the non-culpable inferences are not merely cogent, they are overwhelming.  *Tellabs*, 551 U.S. at 323.  Consider the stock sales that Plaintiff trumpets as the centerpiece of its scienter case:  every single challenged transaction was either executed to cover taxes on vesting restricted stock or made pursuant to Rule 10b5-1 trading plans adopted a full six months before the Class Period.  Far from signaling fraudulent intent, these sales followed a steady, predetermined cadence that reflects exactly the kind of orderly compliance practices that securities law encourages.

The challenged statements fare no better under holistic review.  Plaintiff's fraud theory hinges on the premise that when Mr. Hsing told investors in February 2024 that Hopper issues were "resolved," he secretly knew otherwise.  But Plaintiff pleads no particularized facts to support this serious accusation.  Instead, Plaintiff relies on a third-party report published nine months later that relies on anonymous "feedback" from unidentified sources about unspecified issues with a different product operating at different power specifications.  The FAC is devoid of any contemporaneous document, witness account, or internal communication suggesting that Defendants engaged in deliberate deception.  Faced with this pleading void, the far more cogent inference is that Mr. Hsing accurately described the state of Hopper issues as he understood them in February 2024, and that the Blackwell challenges Edgewater later reported arose through the ordinary course of product development.

The holistic picture the FAC paints is thus remarkably benign:  corporate executives who diligently addressed product issues as they arose, traded stock pursuant to long-established plans adopted well before any alleged wrongdoing, and accurately reported historical financial results to investors.  Plaintiff now asks this Court to brand those actions as fraud based on nothing more than an anonymously sourced report by a third party that spooked investors nine months later.

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

- 12 -

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

That is fraud-by-hindsight of the most transparent variety, and it is precisely what the PSLRA was enacted to prevent.[4]  The FAC should be dismissed with prejudice.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss should be granted with prejudice.

Dated:  March 3, 2026

Respectfully submitted,

FENNEMORE CRAIG P.C.

*s/ Stephen C. Willey*
Stephen C. Willey, WSBA #24499
999 Third Avenue, Suite 600
Seattle, Washington 98104
206.749.0500 (phone)
swilley@fennemorelaw.com

JONES DAY

Geoffrey J. Ritts (*pro hac vice*)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
216.586.3939 (phone)
gjritts@jonesday.com

Marjorie P. Duffy (*pro hac vice*)
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215
614.469.3939 (phone)
mpduffy@jonesday.com

*Attorneys for Defendants Monolithic Power Systems, Inc., Michael Hsing, and Bernie Blegen*

I certify that this memorandum contains 4,138 words, in compliance with the Local Civil Rules.

---

[4] Because the FAC fails to plead a violation of Section 10(b), the Section 20(a) claim must be dismissed. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

DEFS.' REPLY IN SUPP. OF
MOT. TO DISMISS
(2:25-cv-00220-JLR)

- 13 -

FENNEMORE CRAIG P.C.
999 Third Avenue, Suite 600
Seattle, WA 98104 | 206.749.0500

## CERTIFICATE OF SERVICE

I hereby declare under penalty of perjury under the laws of the United States of America that, on this date, the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record.

Executed on March 3, 2026.

s/ *Marjorie P. Duffy*
Marjorie P. Duffy (*pro hac vice*)

DEFS.' REPLY IN SUPP. OF                     - 14 -                FENNEMORE CRAIG P.C.
MOT. TO DISMISS                                                   999 Third Avenue, Suite 600
(2:25-cv-00220-JLR)                                               Seattle, WA 98104 | 206.749.0500