THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

WATERFORD TOWNSHIP GENERAL
EMPLOYEES RETIREMENT SYSTEM, on
Behalf of Itself and All Others Similarly
Situated,

Plaintiff,

vs.

MONOLITHIC POWER SYSTEMS, INC.,
MICHAEL HSING, and BERNIE BLEGEN,

Defendants.

No. 2:25-cv-00220

CLASS ACTION

**AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND
[PROPOSED] ORDER**

NOTING DATE: 6/26/26

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER
(Case No. 2:25-cv-00220)

PAGE - 1

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.  This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case.  The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.    ESI Disclosures**

Within fifteen (15) days of serving their respective responses and objections to requests for the production of documents, each party shall disclose:

1.    Custodians. The custodians most likely to have discoverable ESI responsive to the requests subject to objections in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2.    Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.    Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.    Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [~~PROPOSED~~] ORDER                    PAGE - 2
(Case No. 2:25-cv-00220)

5.    Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C.    ESI Discovery Procedures**

1.    On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.    Prior to running searches:

i.    The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

ii.    After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

iii.    The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [~~PROPOSED~~] ORDER                    PAGE - 3
(Case No. 2:25-cv-00220)

multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

c.    Upon reasonable request, a party shall disclose information relating to automatic document retention systems (*e.g.*, autodeletion of emails and files).

3.    Format.

a.    Except as otherwise specified herein, all other documents and ESI shall be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images. If an original document contains color and the color is not necessary for the reader to understand the meaning of the document or any information presented therein, the document may be produced in black-and-white format. The receiving party may request that the document be produced in color, which requests shall not be unreasonably denied. Each Producing Party shall make a good faith attempt to maximize the text quality of the production through use of settings in the OCR software available to that party (or party's vendor).

b.    Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

c.    Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                    PAGE - 4
(Case No. 2:25-cv-00220)

underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e.    The parties shall produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

f.    The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4.    De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process shall be tracked in a duplicate/other custodian field in the database load file.

5.    Email Threading.  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

6.    Metadata fields. The parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [~~PROPOSED~~] ORDER                    PAGE - 5
(Case No. 2:25-cv-00220)

(where available), custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject (where available); email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. No party shall be required to populate a metadata field for production that does not exist in the ordinary course of business.

7.      Hard-Copy Documents. All imaged hard copy documents shall reflect accurate document unitization including all attachments and container information. The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (*e.g.*, staples, paperclips, rubber bands, Post-it notes, labels, folders, or tabs in a binder). Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.      Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in

the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.      The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.      Deleted, Slack Space (meaning unused storage space between the end of a file and the end of the disk cluster assigned to it), fragmented, or other data only accessible by forensics.

b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

d.      Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e.      Back-up data that are duplicative of data that are more accessible elsewhere.

f.      Server, system or network logs.

g.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

h.      Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 7
(Case No. 2:25-cv-00220)

a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.      Privilege**

1.      A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date modified/date sent. If a metadata field would disclose information that a producing party asserts is privileged, it can be redacted, identified as redacted, and replaced by the producing party with a non-privileged description. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall provide such additional information as required by the Federal Rules of Civil Procedure if the receiving party reasonably requires further information, and explains the need for such information and identifies in writing, by Bates number or other unique identifier where reasonably feasible and if not then by category, each document or category of documents for which it seeks this information. The producing party will respond to any such reasonable request by providing in writing a more detailed description of the nature of the withheld information that will enable the receiving party to assess the claim of privilege. Privilege logs will be produced to all other parties within fourteen (14) days after any substantial completion of document production deadline.

2.      Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [~~PROPOSED~~] ORDER                                    PAGE - 8
(Case No. 2:25-cv-00220)

3.    With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.    Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d).  The provisions of Fed. R. Evid. 502(b) do not apply. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**F.    EXPERTS**

Neither side must preserve or disclose, including in expert deposition testimony, the following documents or materials:

1.    Any form of communication or work product shared between any outside counsel and their respective expert(s) (including experts and consultants who assist the expert's work), or

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                          PAGE - 9
(Case No. 2:25-cv-00220)

between or among any of such side's experts (including consultants who assist the expert's work), except to the extent that such communications or work product are the sole source of facts, data, or assumptions relied upon in forming the opinions to be expressed by an expert disclosed under Federal Rule of Civil Procedure 26(a)(2);

2.    Any form of communication or work product shared between an expert and persons assisting the expert;

3.    Any expert's notes, unless they are expressly relied upon and/or cited in support of an opinion or fact;

4.    Artificial Intelligence ("Artificial Intelligence" or "AI" means any software, system, or technology that utilizes machine learning, deep learning, neural networks, natural language processing, computer vision, or other computational techniques to: (a) learn from data or experience; (b) make predictions, recommendations, classifications, or decisions; (c) generate content, including text, images, audio, video, code, or other outputs; or (d) perform tasks that would otherwise require human intelligence or judgment. Artificial Intelligence includes, without limitation, generative AI systems, large language models (LLMs), machine learning models, predictive analytics tools, and autonomous or semi-autonomous decision-making systems) prompts and output that any expert or any person assisting an expert used in the course of their work on this matter, including but not limited to producing an expert witness report, provided however, nothing contained herein is intended to or shall serve to limit a party's right to examine the bases for an expert's opinion, sources relied on, or methodology; or

5.    Drafts of expert reports, analyses, or other work product.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                          PAGE - 10
(Case No. 2:25-cv-00220)

## G.   MISCELLANEOUS

1.   <u>Objections Preserved</u>. The parties do not waive their rights to object to the production, discoverability, proportionality, authenticity, admissibility, or confidentiality of documents and ESI.

2.   <u>Modification</u>. This Order may be modified by stipulation of the parties or by order of the Court for good cause shown.

3.   <u>Deviations from Order</u>. The parties may agree in writing to agreed-upon deviations from the terms of this Order without seeking or obtaining leave of Court. Any technical violation of this Order shall not result in any party being held in contempt of Court.

4.   <u>Non-Party Documents</u>. A party that issues a non-party subpoena (the "Issuing Party") shall note that the parties to the litigation have requested that non-parties produce documents in accordance with the specifications set forth herein and promptly provide a copy of this Order upon request.

The Issuing Party is responsible for producing any documents obtained under a subpoena to all other parties no less than seven (7) days following receipt of such productions.

DATED: June 26, 2026

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                              PAGE - 11
(Case No. 2:25-cv-00220)

TOUSLEY BRAIN STEPHENS PLLC

By: /s/ Kim D. Stephens, P.S.
Kim D. Stephens, P.S., WSBA #11984
kstephens@tousley.com
Rebecca L. Solomon, WSBA #51520
rsolomon@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
Telephone:  206.682.5600/Fax: 206.682.2992

BLOCK & LEVITON LLP

Jeffrey C. Block (pro hac vice)
Jacob A. Walker (pro hac vice)
Brendan T. Jarboe (pro hac vice)
Mark Byrne (pro hac vice)
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com
brendan@blockleviton.com
mark@blockleviton.com

*Attorneys for Mirko Dardi and Proposed Lead Counsel for the Class*

FENNEMORE CRAIG P.C.

*/s/ Stephen C. Willey*
Stephen C. Willey, WSBA #24499
999 Third Avenue, Suite 600
Seattle, Washington 98104
206.749.0500 (phone)
swilley@fennemorelaw.com

JONES DAY

Geoffrey J. Ritts (*pro hac vice*)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
216.586.3939 (phone)
gjritts@jonesday.com

Marjorie P. Duffy (*pro hac vice*)
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215
614.469.3939 (phone)
mpduffy@jonesday.com

*Attorneys for Defendants Monolithic Power Systems, Inc., Michael Hsing, and Bernie Blegen*

## ORDER

Based on the foregoing, IT IS SO ORDERED.


DATED: June 29, 2026



The Honorable James L. Robart
UNITED STATES DISTRICT JUDGE

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 12
(Case No. 2:25-cv-00220)