UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WATERFORD TOWNSHIP GENERAL EMPLOYEES RETIREMENT SYSTEM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC., et al.,<br><br>Defendants. | CASE NO. C25-0220JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Defendants'[1] motion for judgment on the pleadings. (MJP (Dkt. # 89); Reply (Dkt. # 97); *see also* Am. Compl. (Dkt. # 39); Answer (Dkt. ## 65 (redacted), 68 (sealed)).) Lead Plaintiff Mirko Dardi opposes the motion. (Resp. (Dkt.

[1] Defendants are Michael Hsing, Bernie Blegen (together, the "Executive Defendants") and Monolithic Power Systems, Inc. ("Monolithic") (collectively, "Defendants").

# 96).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[2] the court DENIES the motion.

## II. BACKGROUND[3]

Mr. Dardi brings this putative securities fraud class action on behalf of investors who purchased or otherwise acquired shares of Monolithic common stock between February 8, 2024, and November 11, 2024, inclusive (the "Class Period"). (*See* Am. Compl. ¶¶ 1, 163.) Mr. Dardi alleges that, during the Class Period, Monolithic's Chief Executive Officer Michael Hsing and Chief Financial Officer Bernie Blegen made a series of materially false and misleading statements about the quality and performance of Monolithic's power management integrated circuits ("PMICs") and about the strength of Monolithic's relationship with its largest and most important customer, Nvidia Corporation ("Nvidia"). (*See id.* ¶¶ 1-19, 58-75.) Mr. Dardi further alleges that Mr. Hsing and Mr. Blegen engaged in insider trading in Monolithic stock during the Class Period. (*Id.* ¶¶ 95-144 (allegations regarding the Executive Defendants' stock sales).) According to Mr. Dardi, the revelation of the truth regarding the PMICs' performance and the loss of Nvidia business caused a "precipitous decline" in Monolithic's stock price, resulting in significant losses to the class. (*Id.* ¶¶ 13-19.)

---

[2] Neither party requested oral argument, and the court finds that oral argument would not assist it in deciding the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court set forth the factual and procedural background of this case in detail in its May 6, 2026 order denying Defendants' motion to dismiss. (*See* 5/6/26 Order (Dkt. # 57) at 2-15.) The court presumes that the reader is familiar with that order.

## III. ANALYSIS

The court first sets forth the relevant legal standard before addressing the merits of Defendants' motion.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[M]otions for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (citation and internal quotation marks omitted). Thus, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1026 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2637 (2026) (citation omitted). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

### B. Mr. Dardi's Section 10(b) Claim

To state a claim for securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must allege: (1) a material misrepresentation or omission in connection with the purchase or sale of a security; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Glazer Cap. Mgmt., L.P. v. Forescout Techs.,*

*Inc.*, 63 F.4th 747, 764 (9th Cir. 2023) (citation omitted). Defendants challenge only the scienter element. (*See generally* MJP.)

To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Specifically, the plaintiff must allege that the defendant "made false or misleading statements either intentionally or with deliberate recklessness." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (citation omitted). The scienter element is met "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* (citation omitted).

Unusual or suspicious "stock sales by corporate insiders may constitute circumstantial evidence of scienter." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (citation omitted). Insider trading is "suspicious" only when it is "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Id.* (citation omitted). To determine whether stock sales are suspicious, courts consider "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.* (citation omitted).

The court held in its order on Defendants' motion to dismiss that Mr. Dardi plausibly alleged scienter based on the timing and amounts of the Executive Defendants' stock transactions. (5/6/26 Order at 29-32; *see also* Am. Compl. ¶¶ 95-144 (allegations

regarding the Executive Defendants' stock sales).) The Executive Defendants, however, argue that their stock sales were not suspicious because

> [e]very sale was executed either under a Rule 10b5-1 trading plan adopted six months before the putative class period began, or as a routine "sell-to-cover" transaction in which stock was sold automatically to satisfy tax withholding obligations.

(MJP at 1, 6-16; *see also* MTD (Dkt. # 23) at 16 (making the same argument).) They assert that the Forms 4 and 10b5-1 attached to their answer "are now part of the record" and "establish the nondiscretionary nature" of every sale the Executive Defendants made before and during the Class Period. (MJP at 5; *see generally* Answer.) Thus, according to Defendants, the pleadings "completely refute" Mr. Dardi's theory of scienter. (*Id.*)

The parties dispute whether the court may consider the Forms 4 and 10b5-1 attached to Defendants' answer in deciding this motion. (*See* MJP at 4; Resp. at 5-7; Reply at 1-3.) The court need not address this question because the Forms 4 and 10b5-1 do not "completely refute" Mr. Dardi's scienter allegations at this stage of the proceedings. Courts in this circuit hold that a defendant's "use of Rule 10b5-1 trading plans is an affirmative defense that does not rebut well-pleaded scienter allegations at the pleading stage." *Joyce v. Amazon.com, Inc.*, No. C22-0617JHC, 2025 WL 835054, at *7 (W.D. Wash. Mar. 17, 2025) (compiling cases); *see also Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605 n.3 (N.D. Cal. 2019) (refusing, on a motion to dismiss, to accept evidence of trades under a Rule 10b5-1 plan "as proof of the disputable conclusion that they rule out the possibility of trading based on nonpublic material information"). The court determined in its order on Defendants' motion to

dismiss that Mr. Dardi plausibly alleged scienter based on the Executive Defendants' stock trades. (*See* 5/6/26 Order at 32.) The Forms 4 and 10b5-1 cannot rebut those allegations at the pleading stage. *Joyce*, 2025 WL 835054, at *7. Therefore, the court denies Defendants' motion for judgment on the pleadings.[4]

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion for judgment on the pleadings (Dkt. # 89).

Dated this 22nd day of October, 2026.

JAMES L. ROBART
United States District Judge

[4] The court again declines to consider Defendants' arguments regarding Mr. Dardi's alternative scienter theories. (*See* MJP at 17-24; 5/6/26 Order at 32.)